IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:20-cv-00259

| | |
|---|---|
| THE CHARLOTTE MECKLENBURG BOARD OF EDUCATION,<br><br>    Plaintiff,<br><br><br><br><br>34 ED, LLC d/b/a CENTEGIX,<br><br>    Defendant. | **PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO ENJOIN ARBITRATION PROCEEDINGS** |

NOW COMES Plaintiff, Charlotte-Mecklenburg Board of Education ("Plaintiff" or "CMS"), by and through its undersigned counsel, and pursuant to Local Rule 7.1 (e) of the Rules of Practice and Procedure of the United States District Court for the Western District of North Carolina, and submits this Reply to Defendant 34 ED, LLC d/b/a CENTEGIX ("Defendant" or "CENTEGIX") Opposition to Plaintiff's Motion to Enjoin Arbitration Proceedings ("Opposition"). As the procedural history and facts have been outlined in previous filings, CMS submits the following:

I. DEFENDANT'S UNILATERAL AND VOLUNTARY ACTION TO PAUSE ITS ARBITRATION DEMAND WITH THE AMERICAN ARBITRATION ASSOCIATION (AAA) DOES NOT RENDER CMS' NEED FOR RELIEF MOOT.

To begin, Defendant's primary argument in its Opposition does not undermine CMS' legitimate claim to preventative injunctive relief. Defendant erroneously contends the issue of injunctive relief is moot because a CENTEGIX attorney e-mailed AAA to temporarily pause its arbitration demand while awaiting a decision from the courts. [Document # 10, p. 1] However, the law is well-settled that "a defendant's voluntary cessation of a challenged practice ordinarily does

1

not deprive a federal court of its power to determine the legality of the practice." *Deal v. Mercer Cty. Bd. of Educ.,* 911 F.3d 183, 191 (4th Cir. 2018) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170-71 (2000)); *Atl. Pinstriping, LLC v. Atl. Pinstriping Triad, LLC*, 2016 U.S. Dist. LEXIS 123207, *2-3, 2016 WL 4766496 (W.D. N.C. 2016)(Mullen, G.) ("voluntary discontinuance of challenged activities by a defendant does not necessarily moot a lawsuit.").

A case only truly becomes moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287, 183 L. Ed. 2d 281 (2012) (omitting internal quotations and citations). A case is not mooted if the Court can offer effective prospective, injunctive relief. *McLean v. City of Alexandria*, 106 F. Supp. 3d 736, 2015 U.S. Dist. LEXIS 58826, 2015 WL 427166, at *3 (E.D. Va. Feb. 2, 2015). Importantly, courts are especially wary of attempts to force mootness on an unwilling plaintiff by the defendant taking unilateral, voluntary action. *Brown v. Transurban USA. Inc.,* 144 F. Supp. 3d 809, 828, 2015 U.S. Dist. LEXIS 148489, *35-36 (E.D. Va. Nov. 2, 2015). Additionally, when a defendant voluntarily ceases a challenged action which has created the controversy, "the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness." *Laidlaw,* 528 U.S. at 170-71. This is especially true when, as here, the Defendant maintains the legality of the challenged practice despite their voluntary abandonment of a course of conduct. *Transurban USA. Inc.*, 144 F. Supp. 3d at 828.

Here, Defendant's temporary abandonment of its arbitration demand is an attempt to "force mootness" on CMS by taking unilateral, voluntary action. Further, Defendant has not met its "heavy burden" to show the challenged conduct would not be expected to recur. In its written

2

submission to this court, CENTEGIX did not even attempt to meet this standard, persisting instead in its dogged attempt to reframe the issue as one of mootness. Put simply, this matter is not moot, as there is nothing preventing CENTEGIX from calling or emailing the AAA at any moment to reverse course. Further, the AAA can end the abeyance at any time, because it is not a formal order. Finally, the Georgia action, from which CMS also seeks relief, is still pending. CENTEGIX has not withdrawn its Petition or Motion to Compel from that Court.

CMS' claim for injunctive relief is not moot because this Court can offer "effective prospective, injunctive relief." This Court should order an injunction to enjoin the arbitration proceedings.

II. PLAINTIFF'S NEED FOR INJUCTIVE RELIEF REMAINS AND SUCH RELIEF IS IN THE PUBLIC INTEREST.

As CMS has already argued at length that it can establish a likelihood of success in its Memorandum of Law in Support of its Motion to Enjoin Arbitration Proceedings, CMS will address Defendant's contention that Plaintiff will suffer no injury and no issue of public interest exists. Defendant wrongfully argues there is no likelihood of harm to CMS because of CENTEGIX' voluntary act to pause its AAA arbitration demand. As discussed above, this argument is without merit. Defendant, at any moment, could reverse course and the AAA could end the abeyance. At a moment's notice, CMS would still be in its present position of having to defend an arbitration proceeding in Georgia pursuant to an agreement that does not exist. Further, as mentioned previously, the Georgia action is still pending. If injunctive relief is not granted, CMS will continue to expend limited public resources on defending an action in federal court in Georgia. Similarly, and as further explained below, public interest is harmed because CENTEGIX's premature and unnecessary litigation forces the continued expenditure of public

3

funds to defend an arbitration agreement in two separate forums ( arbitration and the Georgia court) when the same issue can be addressed in the single action before this court. The public's interest is served by ensuring these finite public resources are not wasted. Indeed, Defendants have not cited a single case to the contrary.

### III. CENTEGIX RESPONSE INAPPROPRIATELY RELIES ON ISSUES OF "ARBITRABILITY" INSTEAD OF CONTRACT FORMATION

In support of its Opposition, CENTEGIX first argues that the Motion to Enjoin Arbitration is moot, and thereafter simply incorporates by reference its arguments made in other memoranda to support its: (1) Motion to Compel Arbitration filed in the Middle District of Georgia; and (2) Motion to Stay Litigation filed in the case at bar. CENTEGIX' arguments in these motions focuses on the issue of "arbitrability" and how, pursuant to the Scope of Work agreement ("SOW"), purported to be an agreement between the parties, this issue should be decided by the arbitrator. CENTEGIX fails to address the threshold issue of contract formation, which is separate and apart from the issue of arbitrability.

As this Court recently analyzed and held in *Davis v. TMC Rest. of Charlotte, LLC*, 2019 U.S. Dist. LEXIS 159010, *5-7, 2019 WL 4491529 (W.D.N.C. September 18, 2019) (Conrad, R.):

> Defendant is correct that when the parties' agreement delegates arbitrability issues to the arbitrator, the Court is without power to decide arbitrability issues—the arbitrator must determine issues regarding the validity, enforceability, or scope of the arbitration agreement, including its delegation provision. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530, 202 L. Ed. 2d 480 (2019). At the same time, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bd. Of Teamsters*, 561 U.S. 287, 296, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010). "Therefore, whether a party formed an agreement to arbitrate, including whether it agreed to arbitrate arbitrability, is a question for the court to resolve." *Berkeley Cty. Sch. Dist. v. HUB Int'l Ltd.*, 363 F. Supp. 3d 632, 646 (D.S.C. 2019).

*Id*.

4

IV.  **THE FIRST-FILED RULE APPLIES IN THIS CASE AND THIS COURT SHOULD DETERMINE THE ISSUE OF CONTRACT FORMATION**

CENTEGIX incorporated into its Opposition the argument that the first-filed rule does not apply in this case, stating this Court should make an exception because the federal court in Georgia is the only court that can give complete relief to CENTEGIX by compelling arbitration. [Document # 6, p. 6-8]  This argument is disingenuous, especially when the actions of the parties are examined.

The first-filed rule supports judicial economy, and is applied as follows:

> Where two parties have filed similar lawsuits in different federal courts, courts in the Fourth Circuit generally follow the first-filed rule, prioritizing the first-filed suit. See, e.g., *Learning Network, Inc. v. Discovery Commc'ns, Inc.*, 11 Fed. Appx. 297, 2001 WL 627618, at *3 (4th Cir. 2001); *Nutrition & Fitness, Inc. v. Blue Stuff, Inc*., 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003). "The decision to invoke the first-filed rule is an equitable determination," based on doctrines of federal comity. See *Nutrition & Fitness*, 264 F. Supp. 2d at 360. "[C]ourts have recognized three factors to be considered in determining whether to apply the first-filed rule: 1) the chronology of the filings, 2) the similarity of the parties involved, and 3) the similarity of the issues at stake." *Id*. at 360.

*Great West Cas. Co. v. Packaging Corp. of Am.*, 2020 U.S. Dist. LEXIS 43851, *9-14, 2020 WL 1234555 (M.D.N.C. March 13, 2020).   The Fourth Circuit has recognized two categories of exceptions to the first-filed rule:  (1) when the balance of convenience weighs in favor of the second court; and (2) under special circumstances, particularly when there has been an anticipatory filing of a lawsuit under the threat of litigation in another court.  *Family Dollar Stores, Inc. v. Overseas Direct Imp. Co.*, 2011 U.S. Dist. LEXIS 4680, *5-11, 2011 WL 148264 (W.D.N.C. January 18, 2011) *citing Network, Inc Learning. v. Discovery Communications, Inc.*, 11 Fed. Appx. 297, 2001 WL 627618, at *3 (4th Cir. 2001) (unpublished); *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937).

In the case at bar, CENTEGIX states "[b]ecause the Georgia court can provide full relief to Centegix in response to [CMS'] improvidently filed lawsuit" this Court should defer to the Georgia federal court. [Mot. Stay Litig., Document #6, p.6.] Presumably, CMS' case is "improvidently filed" because it did not first submit to arbitration. However, it is CMS' position that it is not a party to the SOW, and that very issue of contract formation is the threshold question CMS is asking this Court to consider. If CMS had first participated in arbitration, it would have risked waiver of its right to have this issue decided by the Court. *See Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc.*, 320 F.3d 362, 368 (2nd Cir. 2003) (noting that an agreement to arbitrate may be implied from a party participating in arbitration proceedings). Why would CMS first participate in arbitration when it is not a party to an arbitration agreement?

While the CENTEGIX argument of "full relief" may appear valid on its face, it fails when analyzed against the facts of the case at bar. CMS filed a lawsuit for breach of contract in this Court on April 29, 2020. CMS did not seek arbitration because it asserts it is not a party to the SOW document, which contains the arbitration clause. [Document # 3] Later that same day, **after** CMS had filed its lawsuit, CENTEGIX filed a demand for arbitration in Georgia and, six days later, instituted the Petition to Compel Arbitration in the Georgia federal court, forcing CMS to respond and litigate that Petition. CENTEGIX later filed its Motion to Stay or, in the Alternative, Dismiss this case with this Court. The CENTEGIX Motion to Stay filed in this court contains the same legal arguments as its Motion to Compel filed in Georgia: that CMS is obligated to arbitrate under the SOW.

It was CENTEGIX that caused the issue of parallel federal lawsuits, when it could have received the same relief from this Court that it seeks from the Court in Georgia. If CENTEGIX had not filed the Petition to Compel Arbitration in Georgia, and simply filed its Motion to Stay the

6

NC litigation, it would have allowed this Court to rule on the threshold issue of contract formation. If this Court found that CMS was indeed a party to the SOW, it could have stayed or dismissed the current litigation and, at that time, *if CMS refused to submit to arbitration*, CENTEGIX could have filed the Petition to Compel Arbitration in Georgia. CENTEGIX not only caused the existence and dilemma of parallel lawsuits in two federal courts, it is now trying to use it in a self-serving manner to force this Court into transferring the threshold determination of contract formation to the federal court in Georgia.

Additionally, the case cited by CENTEGIX in support of its argument that the first-filed rule does not apply, *Jefferson Pilot Life Ins. Co. v. Griffin*, 2008 U.S. Dist. LEXIS 46753, *13-14 (M.D.N.C. June 16, 2008), is not strictly on point. Although that case involved an arbitration issue, the main reason the *Jefferson Pilot* Court made an exception to the first-filed rule was that the Arizona court had already stayed the litigation:

> In reaching the conclusion that departure from the first-filed rule is appropriate in this instance, the Court first notes that the Arizona court in its discretion declined to exercise its jurisdiction over the questions surrounding the arbitration provision and deferred resolution of the issues presented until this Court had the opportunity to entertain whether or not it would exercise jurisdiction over the case. *See, Griffin*, 2007 U.S. Dist. LEXIS 69009, 2007 WL 2713237, at *4-5 (stating that "the comity doctrine vests a district court with discretion to decline jurisdiction over a case in order to avoid parallel litigation in a coordinate court"). In light of the Arizona court's deference, this Court cannot agree that entering a stay or transferring the case back to the Arizona court would serve the purposes of judicial economy and effective disposition of disputes underlying the first-filed rule.

*Id.*

In terms of judicial economy, CENTEGIX has forced CMS to spend limited public funds to litigate the **exact same issues** with the **exact same parties** in federal court in Georgia. CENTEGIX should not be rewarded for forum shopping and then asking this Court to make an exception to the first-filed rule in the name of judicial economy.

7

CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Enjoin Arbitration Proceedings should be granted, and the relief Defendant seeks should be denied.

This the 2nd day of June, 2020.

/s Hope A. Root
Hope A. Root
Deputy General Counsel
N.C. Bar No. 19771
Phone: 980-343-6228
Email: hopea.root@cms.k12.nc.us


/s Deja D. Kemp
Deja D. Kemp
Senior Associate General Counsel
N.C. Bar No. 50810
Phone: 980-343-6228
Facsimile: 980-343-5739
Email: deja1.kemp@cms.k12.nc.us

Charlotte-Mecklenburg Board of Education
600 E. Fourth Street, 5th Floor
Charlotte, North Carolina 28202

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

       This is to certify that on this date I electronically filed the foregoing **REPLY TO OPPOSITION TO PLAINTIFF'S MOTION TO ENJOIN ARBITRATION PROCEEDINGS** with the Clerk of Court using the CM/ECF systems, which send notification of such filing to the following:

Robert E. Harrington
Cary B. Davis
Gabriel Wright
Robinson Bradshaw
101 North Tryon Street, Suite 1900
Charlotte, NC 28202
RHarrington@robinsonbradshaw.com

*Attorneys for Defendant*

This the 2nd day of June, 2020.

                                /s Hope A. Root
                                Hope A. Root
                                N.C. Bar No. 19771
                                Deputy General Counsel
                                Email: hopea.root@cms.k12.nc.us
                                Charlotte-Mecklenburg Board of Education
                                600 E. Fourth Street, 5th Floor
                                Charlotte, North Carolina 28202
                                Phone: 980-343-6228
                                Facsimile: 980-343-5739